IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-HC-2072-FL

| | |
|---|---|
| PAUL PERRY, | ) |
| Petitioner, | ) ) ) |
| v. | ) ) ORDER |
| ERIK A. HOOKS and FELIX TAYLOR, | ) ) ) ) |
| Respondents. | ) ) |

The matter comes before the court on respondents' motion for summary judgment (DE 6). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants respondents' motion.

**STATEMENT OF CASE**

On February 6, 2014, petitioner was convicted, following a jury trial in Wake County Superior Court, of trafficking heroin by possession, trafficking heroin by sale, trafficking heroin by transportation, conspiracy to traffic heroin, and maintaining a dwelling place for sale of a controlled substance. State v. Perry, 243 N.C. App. 156, 157, 776 S.E.2d 528, 530 (2015). The superior court sentenced petitioner to 689-872 months imprisonment. (Pet. 1).

Petitioner appealed, and, on September 15, 2015, the North Carolina Court of Appeals ("NCCOA") found no error in petitioner's conviction or sentence. Perry, 243 N.C. App. at 178, 776 S.E.2d at 542. The North Carolina Supreme Court ("NCSC") dismissed petitioner's notice of appeal ("NOA") and petition for discretionary review ("PDR") on January 28, 2016. State v. Perry,

368 N.C. 683, 781 S.E.2d 622 (2016). Petitioner was represented at trial by Mr. Jeffrey M. Cutler and on appeal by Mr. W. Michael Spivey. (Pet. 13).

Petitioner did not file any state post-conviction motions. (Id. at 9). On March 30, 2017, petitioner filed the instant counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting the following grounds for relief: (1) the NCCOA's determination that the Cell Phone Site Location Information ("CSLI") obtained by the Raleigh Police Department ("RPD") was "historical" rather than "real-time" was unreasonable in light of the evidence presented; (2) real-time tracking of a suspect's cell phone requires probable cause, which was not obtained in this case; (3) all of the evidence against petitioner must be excluded as the fruit of the poisonous tree; and (4) the NCCOA's application of the good-faith exception to the exclusionary rule was unreasonable in light of the evidence presented.

On March 15, 2017, respondent filed a motion for summary judgment, arguing that petitioner's claims fail on the merits. As part of this motion, respondent filed an appendix consisting of the following exhibits: (1) the record on appeal; (2) petitioner's appellate brief to the NCCOA; (3) an amicus brief filed in the NCCOA by the American Civil Liberties Union; (4) the State's brief filed in the NCCOA; (5) Petitioner's reply brief filed in the NCCOA; (6) petitioner's NOA and PDR filed in the NCSC; (7) the State's response to the NOA and PDR filed in the NCSC; and (8) the trial transcript. Petitioner responded to the summary judgment motion, and respondent filed a reply.

## STATEMENT OF THE FACTS

The facts as summarized by the North Carolina Court of Appeals are as follows:

A. State's Evidence

The State's evidence tended to show that on 10 December 2012, Raleigh Police Department detective M.K. Mitchell ("Detective Mitchell") arrested Kenneth

Holderfield ("Holderfield") for possession of marijuana. Holderfield provided Detective Mitchell with the telephone number of his drug supplier, whom Holderfield referred to as "Sincere." Holderfield also called the number and placed the call on the speaker while in the presence of Detective Mitchell. Detective Mitchell testified he heard Sincere state "he was in Charlotte and would be coming to Raleigh tomorrow." Detective Mitchell also testified Holderfield asked Sincere if he would "front [Holderfield] eight grams." Sincere replied, "We'll talk about it when I get to Raleigh tomorrow."

The following day, Detective Mitchell submitted a sworn application for a phone records production order to access records associated with the telephone number provided by Holderfield, pursuant to 18 U.S.C. § 2703(d) and N.C. Gen.Stat. §§ 15A–261, 15A–262, and 15A–263, to the Wake County Superior Court. The application sought complete account and billing information, and complete call detail records "with cell site information including latitude, longitude, sector azimuth and orientation information for the target telephone number(s)" for the period from 13 November 2012 through 12 December 2012. Detective Mitchell's application also requested "precision location/GPS, E911 locate or Mobile Locate Service if applicable from December 11, 2012 through December 12, 2012."

Detective Mitchell's duly sworn statement stated:

> The Raleigh Police Department is conducting an investigation of a Drug Trafficking case that occurred in Raleigh. There is probable cause to believe that records for [Defendant's telephone number] constitute evidence of a crime and/or the identity of a person participating in this crime, to wit:
>
> This cellular telephone number was obtained from a cooperating defendant who was arrested as a result of drug trafficking. The possessor of the phone ... is being investigated as a major drug trafficker in the Raleigh area. This information has been corroborated by this Detective. It is believed that information received in the records requested in this court order will be crucial in the progression of this investigation.

Superior Court Judge Lucy N. Inman signed the order and Detective Mitchell submitted it to AT & T, the cellular phone service provider and holder of the account associated with the phone number. AT & T provided the records of the location of the cell phone tower "hits" or "pings" whenever a call was made to or from the cell phone. AT & T sent emails of the longitude and latitude coordinates of these historical cell tower "hits" to Detective Mitchell every fifteen minutes. Detective Mitchell testified an approximately five- to seven-minute delay occurred between the

time the phone "pinged" a cell phone tower and the time AT & T received and calculated the location and sent the latitude and longitude coordinates to him.

After receiving the emails of the records from AT & T, Detective Mitchell entered the coordinates into a Google Maps search engine to determine the physical location of the last tower "pinged" from Defendant's phone. Detective Mitchell testified "the hits can range from ... [a] five or seven meter hit to a couple hundred meter hit," which alerts law enforcement to the general area of the phone's last "pinged" location.

On 11 December 2012, at approximately 4:00 p.m., Detective Mitchell received a record of a "hit" from one of AT & T's cell towers, which placed the phone within a few meters of the Red Roof Inn, located on South Saunders Street, near Interstate 40 in Raleigh, North Carolina. Detective Mitchell and other law enforcement officers from the Criminal Drug Enterprise Unit of the Raleigh Police Department began conducting surveillance from unmarked vehicles stationed around the Red Roof Inn. Detective Mitchell testified he received a record, which allowed him to further "pinpoint" the phone's location "down to a certain amount of rooms" in the hotel.

Lieutenant Norris Quick ("Lieutenant Quick") received confirmation from the hotel's front desk clerk that "someone had just checked into" one of the rooms located within the block of rooms Detective Mitchell had identified. The front desk clerk gave the officers the key to the room next to the room recently occupied.

Lieutenant Quick and another officer conducted surveillance from the adjacent room. Lieutenant Quick observed two men enter the adjoining hotel room and leave after approximately five minutes. The officers inside the hotel room transmitted a description of the men leaving the room to officers stationed outside of the hotel. Detective Mitchell and Detective Bruce Richard Bizub ("Detective Bizub") were inside an unmarked patrol car and saw one of the men enter a Toyota Corolla and drive away. The officers followed the vehicle and "started calling on the radio for marked units in the area."

Eventually, a marked patrol vehicle initiated a traffic stop within two miles of the Red Roof Inn. The driver of the Toyota Corolla was identified as Kenneth Wheeler ("Wheeler"). The officers found ten bindles of heroin on Wheeler's person. Wheeler was arrested and told the officers he had obtained the heroin from the Red Roof Inn. Detective Mitchell began preparing an application for a search warrant for Defendant's hotel room.

Before Detective Mitchell could complete the search warrant, Lieutenant Quick transmitted a request for backup at the hotel. Four individuals were leaving the adjoining room in a hurry. Someone had apparently called the occupants to warn

them Wheeler had been stopped and arrested. The officers detained three males, including Defendant, and one female in the hallway.

The officers observed two black plastic grocery bags located on the floor near the four individuals. The bags were open to allow the officers to see inside. The bags contained brown boxes, rubber bands, and digital scales. Detective Mitchell testified, based on his training and experience, he recognized the brown boxes as the type used to contain plastic bags of heroin.

While the four individuals were standing in the hallway, the female suspect, Kiara Ledbetter ("Ledbetter"), voluntarily removed a large bag from inside her pants and gave it to Lieutenant Quick. Lieutenant Quick testified Ledbetter told him, "Oh, no, I'm not going down for this. This isn't mine. It's Paul's." The bag appeared to contain heroin.

Defendant, Ledbetter, and the two other individuals, Keyondre Owens ("Owens") and Paul Shell ("Shell"), were taken into custody, advised of their Miranda rights, and searched by Detectives Mitchell and Bizub. Shell possessed ten bindles of a substance believed to be heroin in the front pocket of his jeans. Defendant possessed $1,620 in cash, but no heroin on his person. A forensic drug chemist with the City–County Bureau of Identification subsequently confirmed the identity of the substances as heroin, including the bindles found on Wheeler during the traffic stop.

On 11 March 2013, a grand jury indicted Defendant for: (1) trafficking by possession, 28 grams or more of heroin; (2) trafficking heroin by sale; and (3) maintaining a dwelling used for keeping or selling controlled substances. On 8 July 2013, Defendant was also indicted for: (1) trafficking heroin by transportation; and (2) conspiracy to traffic heroin by possession, transportation, and sale.

## B. Defendant's Motion to Suppress

On 13 November 2013, Defendant filed a pretrial motion to suppress the search of telephone records and determination of the location of his cell phone, and any evidence seized as a result of these searches. He argued law enforcement's receipt of the records of the coordinates of the towers his cell phone had "pinged" constituted an unreasonable search without a warrant based upon probable cause in violation of the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States, and under Article I, Section 20 of the Constitution of North Carolina. Defendant also moved to suppress statements he made to officers on 11 and 12 December 2012, and to suppress evidence obtained as a result of an unconstitutional search and seizure.

5

The trial court heard Defendant's motions prior to trial on 3 February 2014 and entered a written order denying Defendant's motions to suppress on 20 February 2014. In its order, the trial court made the following findings of fact:

> 11. That on December 11, 2012, M.K. Mitchell appeared before the Honorable Lucy N. Inman, Superior Court Judge, and presented to her an Application For Phone Records together with a proposed Order concerning [Defendant's] cell phone number....
>
> ....
>
> 20. That Detective Mitchell was possessed of sufficient facts to conclude that violations of the North Carolina controlled substances laws were being committed and were about to be committed by the person possessing the cell phone ... at the time he made the Application.
>
> 21. That the Application contained a sufficient factual basis from which a neutral magistrate could conclude that the issuance of the Order was appropriate in order to assist in the investigation of violation of drug trafficking laws.
>
> 22. That the contents of the Application contained the identity of the law enforcement officer making the application ... and the identity of the Law Enforcement Agency conducting the investigation....
>
> 23. That the contents of the Application also contained a certification that the information sought in the Phone Records Production Order will assist with the investigation of this drug trafficking case.
>
> 24. That the contents of the Application in the Order tendered to Judge Inman complies with [N.C. Gen.Stat. §§] 15A–262 and 263 and with 18 U.S.C. [§ ] 2703.

### C. Defendant's Testimony at Trial

Defendant's case proceeded to trial before a jury on 3 February 2014. Defendant testified he was a heroin user, and Ledbetter sold heroin. He stated he had traveled to Raleigh with Shell and Owens to purchase heroin from Ledbetter. Defendant stated he rented a room at the Red Roof Inn. He traveled to the train station to pick up Ledbetter and drove her back to the Red Roof Inn. Shell and Owens were inside the hotel room "bagging up" heroin. Defendant testified the heroin was already in the hotel room when he arrived, but he helped Shell and Owens bag it. Defendant also

testified he did not sell heroin to anyone from the hotel room, and only Shell and Ledbetter had brought heroin into the hotel room.

The jury returned a verdict of guilty on all five charges. The trial court sentenced Defendant to mandatory minimum sentences of 225 to 282 months imprisonment for his three trafficking convictions, to run consecutively. The trial court also sentenced Defendant to 14 to 26 months imprisonment for sale of heroin, and 6 to 8 months imprisonment for intentionally maintaining a dwelling for keeping or selling controlled substances, to run concurrently with the mandatory sentences.

Defendant gave notice of appeal in open court.

Perry, 243 N.C. App. at 158–62, 776 S.E.2d at 530–33 (2015).

## DISCUSSION

A.   Summary Judgment

1.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its

merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407; see White v. Woodall, 134 S. Ct. 1697, 1702–07 (2014); Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013) (per curiam). A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

2. Analysis

The crux of petitioner's claims is that the state trial and appeal courts erred in their application of the Fourth Amendment. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 482 (1976); see, e.g., Sutton v. Pfister, 834 F.3d 816, 820 (7th Cir. 2016). When presented with a Fourth Amendment claim on habeas, the court must

> first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice. This may be determined . . . from the relevant state statutes, the applicable state court decisions, and from judicial notice of state practice by the district court.

Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978) (emphasis omitted). Once this court "has made the 'opportunity' inquiry, it need not inquire further into the merits of the petitioner's case . . . unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired." Id. An adequate opportunity exists where the petitioner "had an opportunity to present his Fourth Amendment claims by a motion to suppress both at the trial court level and thereafter to assign as an error, an adverse ruling thereon, on appeal." Id.

Here, petitioner had ample opportunities to challenge the allegedly unconstitutional search. Specifically, petitioner was provided an opportunity to litigate his Fourth Amendment claim to the trial court via a motion to suppress, and then raised the claim before the NCCOA where it was addressed on the merits at length and rejected. The NCCOA's analysis is critical to whether petitioner has been afforded an opportunity to litigate his Fourth Amendment claims, and the court

incorporates herein by reference the NCCOA's thorough analysis of the issues. Perry, 243 N.C. App. at 168–78.

In sum, petitioner filed a motion to suppress in the trial court and a pre-trial evidentiary hearing was held during which petitioner presented both testimony and argument. The trial court entered a careful, detailed order denying the motion to suppress. (Pet'r Ex. (DE 8-1) 24- 33). Petitioner then raised the substance of his current Fourth Amendment claims on direct appeal. The NCCOA also thoroughly analyzed the issues presented. Both the trial court and the NCCOA exhaustively analyzed the issue of whether petitioner's Fourth Amendment rights were violated.

Petitioner argues he was denied an opportunity to litigate his Fourth Amendment claim because the NCCOA "made the unreasonable determination that the CSLI obtained by the Raleigh PD was 'historical' rather than 'real-time.'" (Pet'r Mem. (DE 2) 6). Because the NCCOA determined the CSLI was historical, it further determined that no search occurred. However, despite that fact that the NCCOA ultimately concluded that no search occurred, the NCCOA thoroughly analyzed every potential angle of petitioner's Fourth Amendment claim. Perry, 243 N.C. App. at 168–78, 776 S.E.2d at 537–42. Indeed, the NCCOA concluded its analysis by noting that, even if its determination that the CSLI was historical rather than real-time was incorrect, petitioner still did not have a viable Fourth Amendment claim in light of the good faith exception. Id. at 176. Similarly, the concurring opinion in Perry agreed with petitioner's argument that the information was real-time, and still determined that petitioner's Fourth Amendment claim was not viable. Id. at 183.

Petitioner's disagreement with the ultimate disposition of his Fourth Amendment claim does not indicate he was not given a full opportunity to litigate his arguments. See Doleman, 579 F.2d

at 1266 (habeas petitioner must allege "the reasons he has, and the facts in support thereof, as to why he contends he did not" have a full and fair opportunity to litigate his Fourth Amendment claim (emphases in original)). Thus, the court may not consider this claim in a habeas petition. See Inyama v. North Carolina, No. 5:15-HC-2205-FL, 2016 WL 3676406, at *4 (E.D.N.C. July 7, 2016) (granting summary judgment where "petitioner was provided a full and fair opportunity to raise and litigate his Fourth Amendment claim, and in fact raised it at a suppression hearing in the trial court . . . and on direct appeal.") appeal dismissed (Sept. 21, 2016).

Alternatively, the NCCOA adjudication of petitioner's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. As noted above, the NCCOA held in the that the Fourth Amendment requirement of a search warrant based upon probable cause did not apply to the CSLI obtained by the RPD in this case because that information was historical and not real-time. That determination was not unreasonable. United States v. Jones, 565 U.S. 400 (2012); Kyllo v. United States, 533 US. 27 (2001); United States v. Miller, 425 U.S. 435 (1976). Specifically, the Fourth Circuit has held "that the Government's acquisition of historical CSLI from . . . [a] cell phone provider d[oes] not violate the Fourth Amendment." Graham, 824 F.3d at 424. In explaining this determination, the Fourth Circuit noted: "Supreme Court precedent mandates this conclusion . . . the Court has long held that an individual enjoys no Fourth Amendment protection in information he voluntarily turns over to a third party" Id. (alterations and quotations omitted). The Fourth Circuit then pointedly added "[t]he Supreme Court may in the future limit, or even eliminate, the third-party doctrine. Congress may act to require a warrant for CSLI. But without a change in controlling law, we cannot conclude that the Government violated the Fourth Amendment in this case." Id. Thus,

11

the NCCOA's similar determination was not unreasonable. Id.; see also United States v. Giddins, 858 F.3d 870, 878 n. 5 (4th Cir. 2017) ("[T]he government does not violate the Fourth Amendment when it obtains historical CSLI from a service provider without a warrant.'"); United States v. Exum, 657 F. App'x 153, 156 (4th Cir. 2016) ("[T]he Government is not required to obtain a warrant before procuring a defendant's CSLI"). Moreover, it was also not unreasonable for the NCCOA to determine, alternatively, the suppression was not appropriate under the good faith exception. See United States v. Shah, No. 5:13-CR-328-FL, 2015 WL 72118, at *16 (E.D.N.C. Jan. 6, 2015) (applying good faith exception to search under the SCA).

Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Specifically, the NCCOA's determination that the CSLI obtained by the RPD was historical rather than real-time was not unreasonable in light of the evidence presented. The NCCOA examined the entire record and concluded that the CSLI obtained by the RPD revealed where petitioner's cell phone has been located at some point in the past, rather than where the phone was presently located. In support of this determination the NCCOA noted that there was a five to seven minute delay in the information gathered by AT&T, and that AT&T only delivered this information to the RPD approximately every 15 minutes. Petitioner's cell phone was never contacted, "pinged," or its precise location directly tracked by the officers. The officers did not interact with Defendant's cell phone, nor was any of the information received directly from the cell phone. These findings of fact are presumed correct, unless rebutted by clear and convincing evidence. Petitioner has not presented any such evidence. Accordingly, the court finds that the NCCOA's determination of the facts was reasonable.

Finally, even if the NCCOA's determinations were unreasonable, a favorable decision on petitioner's claim would require the retroactive application of a rule that is not clearly established. See Shah, No. 5:13-CR-328-FL, 2015 WL 72118, at *7 ("In addition, on finding that the SCA conforms with existing Supreme Court precedent interpreting the Fourth Amendment, courts have . . . held that the government does not violate the Fourth Amendment in acquiring cell site location data from a service provider" (citations ommited)). The United States Supreme Court's ruling in Teague v. Lane, 489 U.S. 288, 316 (1989), bars the creation of new constitutional rules that must be applied retroactively. Jones v. North Carolina, No. 5:11-HC-2099-FL, 2012 WL 530011, at *7 (E.D.N.C. Feb. 17, 2012), appeal dismissed, 474 F. App'x 196 (4th Cir. 2012). Teague provides an alternate basis for dismissing petitioner's claims.

B.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

For the foregoing reasons, respondents' motion for summary judgment (DE 6) is GRANTED and petitioner's § 2254 petition is DISMISSED. A certificate of appealability is denied, and the clerk of court is DIRECTED to close this case.

SO ORDERED, this the 20th day of March, 2018.

LOUISE W. FLANAGAN
United States District Judge